3UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT DOUGLASS,

               Plaintiff,         09-CV-6229

v.                                        **DECISION**
                                              **and ORDER**
MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____

## **INTRODUCTION**

Plaintiff Robert Douglass ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), claiming that the Commissioner incorrectly terminated Plaintiff's Supplemental Security Income ("SSI") benefits. Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") John P. Costello, which discontinued Plaintiff's SSI benefits, was erroneous and contrary to law as it was not supported by substantial evidence within the record.

Now before the Court is the Commissioner's motion for judgment on the pleadings and Plaintiff's cross-motion for a judgment on the pleadings, both pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and 42 U.S.C. §405(g). For the reasons stated below, Plaintiff's cross-motion for a judgment on the pleadings is denied and the Commissioner's decision is affirmed.

## BACKGROUND

On January 8, 1985 Plaintiff was awarded SSI benefits, pursuant to an application that was submitted on behalf of the Plaintiff on December 27, 1984. (R. 61)[1]. Plaintiff began receiving SSI because it was determined by the Commissioner that his bronchial asthma and cardiac defect were functionally equivalent to a listed impairment.

In March of 2000, Plaintiff was notified that his case would be subject to an age 18 redetermination pursuant to 20 C.F.R. §416.987. Applying the adult disability criteria, the Commissioner found that the Plaintiff continued his disability as a result of his mental and physical impairments. (R. 62, 143-158, 594-606, 613-616).

However, after a continuing disability review, Plaintiff received a notice dated August 30, 2004 indicating that his benefits would be terminated as of October 2004 because he was no longer considered disabled. (R. 63-64, 66-69). In response to Plaintiff's SSI termination, he filed a request for reconsideration which was denied on October 6, 2004, and again denied by a Disability Hearing Officer on December 29, 2004. (R. 75-87).

Plaintiff then proceeded to make a timely request for a hearing, which was held on May 21, 2007 before Administrative Law Judge ("ALJ") John P. Costello. On August 8, 2007, the ALJ issued

---

[1]Citations to "R." refer to the Record of the Administrative Proceedings.

his decision finding that Plaintiff's condition had improved and therefore he was no longer qualified for SSI benefits. (R. 677-682, 42-53). Plaintiff then made a timely request for review to the Appeals Council, where additional medical records were submitted related to Plaintiff's current impairments. (R. 22-28, 56-60). The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied Plaintiff's request for review on March 27, 2009. (R. 29-33). This action followed.

## DISCUSSION

### I.  APPLICABLE LEGAL STANDARDS OF REVIEW

#### A.  Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such claims, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings are supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de

novo). The court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D.Tex.1983) (citation omitted). Defendant asserts that the ALJ's decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).

**B. The Applicable Legal Standard for Determining Disability of an Adult for SSI Benefits**

Pursuant to the regulations, the Commissioner uses a five-step process in which it is determined whether a disability exists for the purpose of determining adult disability qualifications. 20 C.F.R. §416.920. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §416.920(a)(4)(I). If the adult is engaged in substantial gainful activity, there will be no finding of disability. 20 C.F.R. §416.920(a),(b). If it is determined that Plaintiff is not engaged in any type of substantial gainful activity, the ALJ will proceed to step two which considers the medical severity of Plaintiff's

impairment(s). 20 C.F.R. §416.920(a)(4)(ii). If Plaintiff does not have a severe medically determinable physical or mental impairment that meet the duration requirement within §416.909, or a combination of impairments that is severe and meets the duration requirement, the ALJ will find the Plaintiff not disabled. Id. If there is a finding of severe impairment, the ALJ will determine the medical severity of Plaintiff's impairment(s). 20 C.F.R. §416.920(a)(4)(iii). If the impairment(s) meet or equal one of the listings within appendix 1 to subpart P of part 404 and meets the duration requirement, the ALJ will find you disabled. Id. If an impairment is severe, but does not meet one of the listings, the ALJ will consider his assessment of Plaintiff's residual functional capacity ("RFC") and past relevant work. 20 C.F.R. §416.920(a)(4)(iv). If the Plaintiff is found to presently participate in his or her past relevant work, the ALJ will find that the Plaintiff is not disabled. Id. If the Plaintiff is not able to participate in his or her past relevant work, the ALJ will consider Plaintiff's RFC, age, education, and work experience to determine whether Plaintiff is able to make an adjustment to other work. 20 C.F.R. §416.920(a)(4)(v). If Plaintiff is unable to make the adjustment, the ALJ will find the Plaintiff to be disabled. Id. 20 C.F.R. §416.920, see, e.g., Green v. Astrue, 2007 WL 274893 at *6 (S.D.N.Y., 2007).

### C. The Applicable Legal Standard for Termination of Disability Benefits

Once an adult is found to be disabled, their continued eligibility for benefits needs to be periodically reviewed. 20 C.F.R. §416.994(a). In deciding whether or not a Plaintiff's disability continues, the ALJ must determine:

> "if there has been any medical improvement in [Plaintiff's] impairment(s) and, if so, whether this medical improvement is related to [Plaintiff's] ability to work. If [Plaintiff's] impairment(s) has not so medically improved, [the ALJ] must consider whether one or more of the exceptions to medical improvement applies. If medical improvement related to [Plaintiff's] ability to work has not occurred and no exception applies, [Plaintiff's] benefits will continue. Even where medical improvement related to [Plaintiff's] ability to work has occurred or an exception applies, in most cases, [the ALJ] must also show that [Plaintiff is] currently able to engage in substantial gainful activity before [the ALJ] can find that [Plaintiff is] no longer disabled." 20 C.F.R. §416.994(b).

After applying this seven-step analysis, the ALJ may make the determination of whether Plaintiff's disability has terminated according to the regulations and disclose Plaintiff's capability of returning to some form of substantial gainful activity.

## II. THE ALJ'S DECISION TO TERMINATE PLAINTIFF'S BENEFITS IS SUPPORTED BY SUBSTANTIAL EVIDENCE IN THE RECORD

### A. The ALJ's decision that Plaintiff's impairments had medically improved is supported by substantial evidence within the record

In a decision dated August 8, 2007, the ALJ followed the seven-step analysis to determine whether the Plaintiff continued to

be disabled. (R. 45-53). The ALJ found that Plaintiff's disability ended on August 1, 2004, and that he had not been disabled since that date. The ALJ also found that in 2000 at the time of the Comparison Point Decision ("CPD"), Plaintiff's medically determinable impairments were: borderline intellectual functioning, knee impairments, depressive disorder, and asthma.

The ALJ also found that since August 1, 2004, none of Plaintiff's impairments met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.925 and 416.926). (R. 47). He also concluded that individually and in combination, the claimant's then impairments have not met or medically equaled a listing since August 1, 2004. In so finding, the record reveals that the ALJ explicitly reviewed the listings for affective disorders (12.04), mental retardation (12.05), disfunction of the joints (1.02), and asthma (3.03). With respect to Plaintiff's mental impairments, the ALJ found that Plaintiff had only mild restrictions in activities of daily living, moderate difficulties in social functioning, mild difficulties in concentration, persistence, and pace, and had no episodes of decompensation. (R. 47).

The record reveals that the ALJ's comparison of Plaintiff's abilities at the CPD and those found in the record as of August 1, 2004, that there had been a decrease in medical severity of the impairments which were present at the time of the CPD. The record

revealed that Plaintiff was able to engage in an array of activities including caring for himself, his home, his ability to take public transportation, ride a bike, cook, clean, handle money, go fishing, volunteer as a fireman (although the record shows that he was discharged as a volunteer fireman because he became intoxicated while at the firehouse, lost control of his temper, and caused property damage resulting in expulsion from the fire department). (R. 367, 709). He also was able to work on a farm, lived with his girlfriend, and had the ability to socialize with friends. (R. 121-2, 158-9, 178, 180).

Dr. Thomassen performed a consultative psychological examination in February 2000 and a re-examination in July 2004. In 2000, he diagnosed Plaintiff: "borderline intellectual functioning" and "rule out 311.00 depressive disorder, NOS." (R. 478). In 2004, he found that Plaintiff's thought, affect, sensorium, attention/concentration, and recent and remote memory were all normal. Plaintiff's cognitive functioning was estimated to be in the low average range, but Plaintiff did not present, with any clear symptoms of depression. Dr. Thomassen noted that there was a decrease in the medical severity of the claimant's depressive disorder since the time of the CPD in 2000. The claimant reported to him fewer signs and symptoms of mental illness and had a clear mental status examination. His Axis II diagnosis was again borderline intellectual functioning. However, he found no clear

signs of depression and did not make it a part of Plaintiff's Axis I diagnosis. (R. 48).

With respect to his knee problems, prior to the CPD Plaintiff had undergone multiple surgeries to his knees. (R. 48, 512, 519). In August 2004, Plaintiff reported that he was able to "do everything." (R. 48). Consequently, the ALJ found that at the time of Plaintiff's continuing disability review in 2004, the Plaintiff's knee impairment had medically improved.

The ALJ also noted that by August 2004, the Plaintiff reported that his asthma was stable, and admitted that he had not taken medication for it in years. (R. 350).

### B. The ALJ properly found that Plaintiff did not meet a listed impairment and had medically improved.

Plaintiff claims that his impairments fall within Listing 12.05C of the Regulations and therefore equal the listing for mental retardation. In response, the Commissioner argues that the Plaintiff disregards the notes from treating and examining sources which show that not only did the Plaintiff not meet the listing at 12.05, but also that he had improved "at the very least in his ability to function despite his mental impairments." Reply Brief, page 1.

In order to meet the Listing of 12.05C of the Regulations, Plaintiff was required to show that he had an IQ score between 60 and 70, as well a "physical or other mental impairment imposing an additional and significant work-related limitation of function."

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C. The record reveals that Plaintiff tested well above the IQ scores required by the listing. Dr. Meteyer found the Plaintiff's full scale IQ was 79, his verbal IQ 78, and performance IQ 85. (R. 401). His full scale IQ qualified as borderline intellectual functioning, his verbal score indicated borderline range, and his performance score indicated low average range. (R. 40). For the claimant to show his impairment matches a listing, it must meet all the specified medical criteria. An impairment that manifests only some of the criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Furthermore, with respect to Plaintiff's claims that he suffered another physical or mental impairment imposing additional and significant work-related limitations (as required by 12.05C) and that his improvement was not relevant to his ability to work, Plaintiff's own statements are inconsistent with this position. By 2004, he had no knee problems since his surgery, and was "able to do everything." (R. 348). He was able to engage and function in a wide range of activities on a daily basis. Plaintiff had full strength in his upper and lower extremities. (R. 350). Dr. Dina opined that Plaintiff's asthma caused no functional limitation. Dr. Thomassen, in his psychological evaluation in 2004, specifically noted that Plaintiff's allegations of psychiatric disability were inconsistent with his examination findings. (R. 361). Significantly, his IQ scores were markedly improved by

the time of the ALJ's decision with every category of testing well above the 70 point limit in Listing 12.05C.

An ALJ is not permitted to declare a claimant disabled unless such a determination is fully supported by substantial evidence in the record. Here, there is no evidence that the Plaintiff qualified as mentally retarded as he did not meet the requirements of Listing 12.05C. Despite Plaintiff's encouragement, the ALJ would be outside his realm of authority were he to diagnose Plaintiff with a disability (mental retardation) that is not supported by medical records and substantial evidence in the record. I therefore find that the ALJ was correct in determining that Plaintiff was not entitled to a finding of mental retardation pursuant to the requirements set forth in Listing 12.05C of the Regulations.

**C. The ALJ properly assessed Plaintiff's residual functioning capacity in regard to Plaintiff's working capacity**

The ALJ posed hypothetical questions to the vocational expert, Mr. Manzi, based upon the claimant's residual functional capacity. Using Mr. Manzi's answers, he found that since August 1, 2004 the Plaintiff had been capable of making a successful adjustment to work that existed in significant numbers in the national economy. The ALJ properly relied upon the opinion of the vocational expert based upon the hypotheticals posed which were supported by substantial evidence. The hypotheticals posed to the VE were consistent with the medical evidence in the record and the opinions

given by the VE were within the realm of his authority. <u>Duman v. Schweikler</u>, 712 F.2d 1545, 1554 (2d Cir. 1983). Therefore, I also affirm the ALJ's finding, based on the VE's opinion, that Plaintiff had the ability to perform light forms of work.

## **CONCLUSION**

Accordingly, based upon a review of the record, I find that the ALJ's decision that Plaintiff was not qualified to receive Supplemental Security Income was supported by substantial evidence for the reasons stated in this decision. I grant the Commissioner's motion for judgment on the pleadings. Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                        s/Michael A. Telesca
                                           MICHAEL A. TELESCA
                                   United States District Judge

Dated:    Rochester, New York
           July 30, 2010